## BENNETT v. NEW YORK CENT. & H. R. R. CO.

*(Supreme Court, General Term, Fifth Department.    October 23, 1891.)*

**1. RAILROAD COMPANIES—NEGLIGENCE—ACCIDENTS AT CROSSINGS.**

In an action against a railroad company for personal injuries, it appeared that plaintiff, a girl of 13 years, while crossing defendant's tracks in a sleigh on a public street, was run into by a train. Plaintiff was familiar with the locality and the running of trains. The track crossed the street nearly at right angles, and the view from the direction from which the train came was obstructed by buildings. There was a flagman's station at the crossing, but he was off to one side at the time, and hidden by a wagon. On a track near by was another train blowing off steam. The man who was driving plaintiff got over the first of the tracks before he saw the train, and before the flagman warned him, and, when he attempted to back, the sleigh runner caught on the track. He then attempted to go ahead, and was struck by the train. A number of witnesses testified that the train was going at the rate of from 15 to 35 miles an hour, and gave no signal. Others testified that it gave signals. *Held,* that a verdict for plaintiff was warranted.

**2. SAME—IMPUTED NEGLIGENCE.**

The negligence of one who is driving a private vehicle cannot be imputed to another person traveling therein, if the latter has no right to direct or control the former's actions.

**3. DAMAGES—PERSONAL INJURIES.**

Where a girl of 13 years receives, through another's negligence, injuries resulting in curvature of the spine, and making her a chronic invalid, probably for life, a verdict for $8,000 is not excessive.

**4. CONTRIBUTORY NEGLIGENCE—INSTRUCTIONS.**

On the question of a child's contributory negligence, an instruction that the degree of care which she should exercise "must not be measured by a person of mature years" is not misleading.

Appeal from circuit court, Ontario county.

Action by Martha Bennett, by guardian, against the New York Central & Hudson River Railroad Company for personal injuries. Verdict and judgment for plaintiff for $8,000. Defendant appeals. Affirmed.

Argued before DWIGHT, P. J., and LEWIS and MACOMBER, JJ.

*Camp & Dunwell,* for appellant. *John Gillette,* for respondent.

LEWIS, J. This action was commenced to recover damages for injuries received by the plaintiff by reason of a collision which occurred between the defendant's locomotive at the Main-Street crossing, in the village of Canandaigua, and a cutter in which at the time the plaintiff was riding. The plaintiff was at the time she received her injuries 13 years $3\frac{1}{2}$ months old, and a girl of ordinary intelligence. She was residing in Canandaigua, north of the railroad crossing. Main street runs north and south, and is crossed nearly at right angles by defendant's railroad track. The defendant's road between Rochester and Syracuse passes through the business part of the village, and consists of a single track. Running parallel with defendant's track at the crossing of Main street, and 10 or 15 feet southerly therefrom, is the defendant's track, running from Canandaigua to Batavia. The defendant's depot is located some 400 feet easterly from the Main-Street crossing. The plaintiff had for a few weeks prior to the accident been accustomed daily to ride upon Main street across the defendant's track, and was familiar with the railroad and the running of the trains. On the day of the accident she had ridden in a cutter southerly across the railroad tracks with a Mr. Mulligan, a neighbor, and was at the time of the accident returning up Main street to her house in a cutter with James Mulligan. Mulligan was driving the horse, and, as they attempted to cross the defendant's track on Main street, a locomotive drawing a train of cars, coming from the west, came in collision with the cutter. The plaintiff was thrown out and seriously injured, and James Mulligan was killed. The defendant's track crosses Main street nearly at right angles, but immediately west of Main street it curves to the north. There are buildings located upon the west side of the street near the track, which, to some extent,

obstruct the view along the track to the west by people passing along the street. There was a flagman's shanty on the west side of the street, south of the track, and a train of cars standing upon the Batavia track, immediately west of Main street. There was standing in the center of Main street, just south of the southerly track, at the time of the accident, a large ice-wagon, with horses attached to it. Mulligan and the plaintiff, in coming up the street, passed easterly of the ice-wagon, and, as they came upon the southerly track, saw the approaching train, and Mulligan attempted to back his horse, but, his runner striking against the track, he was not able so to do, and he then attempted to go ahead, and was struck by the train coming from the west. The defendant had been accustomed, theretofore, to keep a flagman at that station. At the time of the accident there was evidence tending to show that he was standing near the side of the street west of the ice-wagon, and in a position so that Mulligan was not able to see him, as he was passing the ice-wagon.

There was, as is not unusual, a sharp conflict in the evidence; but the testimony of a large number of witnesses called by the plaintiff tended to show that the train, as it approached Main street, was running very rapidly,—all the way from 15 to 35 miles an hour. Witnesses called by the plaintiff testified that they were in a position to see and hear what occurred, saw the train as it approached the crossing, and that no signals of its approach were given. The engine of the train upon the Batavia track, standing just west of the street, was blowing off steam at the time of the accident, and the steam was blowing easterly across Main street. The defendant's witnesses testified that the train was approaching the crossing at a very moderate rate of speed, and that the bell was being rung and the whistle sounded. We think there was sufficient evidence to justify the jury in coming to the conclusion that the defendant's negligence caused the injuries to the plaintiff.

The plaintiff testified that, as they approached the crossing, she and Mulligan looked in both directions along the railroad track; that she did not see or hear the approaching train; and that her eye-sight and hearing were good. She testified in answer to questions as follows: "*Question.* Do you recollect anything, as you got up towards the track, of looking yourself up the tracks? *Answer.* Yes, sir. *Q.* Tell the jury what you did in that way, and where you were. *A.* I looked up and down the track. *Q.* When? *A.* When we were nearly to the track. *Q.* Did you notice anything of a train standing on the Batavia track? *A.* I don't know. I have forgot. *Q.* What, if anything, did you notice James doing about looking? *A.* He looked down the track, too. *Q.* Down or up, which? *A.* Both ways. *Q.* What did you notice him do? *A.* He looked up and down the track, too. *Q.* Do you know how near the track you were at this time? *A.* No, sir. We were quite near, though. *Q.* State to the jury whether you saw or heard any train coming at the time you looked. *A.* No, sir; I did not. *Q.* Was there any coming from the west that you could see? *A.* No, sir. *Q.* Or hear? *A.* No, sir. *Q.* How was your hearing and eye-sight? *A.* All right. *Q.* Tell the jury what was the first thing you observed. Describe the transaction and circumstances. *A.* When we were on the Batavia track, I think the cutter was on the Batavia track, and we were almost on the other track, and we saw the engine coming. It was, as I remember, by the town-house. And the horse reared up when it heard the engine; and then I said, ' We are going to be killed! ' and I got down in the bottom of the cutter, and that is the last I remember." She was riding with a man whom she had reason to suppose was competent to manage the horse, and make the crossing safely. She had frequently ridden with him across the same track. The flagman and the driver of the ice-wagon both halloed, directing Mulligan to stop, but not until his cutter was upon the Batavia track, and his horse near the track upon which the train was approaching. Mulligan, the evidence shows, then attempted to stop and

back his horse, but the runner of his cutter caught in the railroad track, and in his excitement he attempted to go ahead, and in so doing came in collision with the engine, and was killed.  Mulligan's position became so dangerous and imminent as to excuse conduct which under less trying circumstances might be adjudged careless.  *Twomley* v. *Railroad Co.*, 69 N. Y. 158; *Dyer* v. *Railway Co.*, 71 N. Y. 235; *Sherry* v. *Railroad Co.*, 104 N. Y. 657, 10 N. E. Rep. 128.  The plaintiff being a passenger merely, and having no right to direct or control Mulligan, while not excused from exercising care herself, Mulligan's negligence cannot be imputed to her.  *Robinson* v. *Railroad Co.*, 66 N. Y. 11; *Masterson* v. *Railroad Co.*, 84 N. Y. 247; *Dyer* v. *Railway Co.*, 71 N. Y. 228; *Platz* v. *City of Cohoes*, 24 Hun, 101; *Hoag* v. *Railroad Co.*, 111 N. Y. 199–203, 18 N. E. Rep. 648.  There was sufficient evidence, we think, to justify the jury in finding the plaintiff free from negligence contributing to her injuries.

The plaintiff recovered a verdict for $8,000.  Her injuries were very severe. The evidence tends to show that she is afflicted with curvature of the spine caused by the accident, and was made a chronic invalid, and in all probability will never recover from the effects of her injuries.  We cannot say that the jury erred in the amount of the verdict they gave.

The court fully and fairly presented the case to the jury in the charge.  The defendant's requests to charge were very numerous.  Requests, with very slightly altered phraseology, were presented again and again to the court.  An examination of these satisfies us that they were disposed quite as favorably to the defendant as the law and the evidence justified.  The court did not intend, by the remark to the jury that "the degree of care and caution which the plaintiff should exercise must not be measured by a person of mature years," as a direction to the jury, but a suggestion that in considering the plaintiff's conduct it was their duty to consider and give proper weight to the fact that she was a child, and must have been so understood by the jury.

The appellant contends that the court erred in charging the jury as follows: "Perhaps I have said all that is necessary on that point, unless it might be to add that if the flagman's position was such, and the manner in which he stopped Mulligan was such, that it tended to mislead him, leading him to believe that a train was backing down, or something else was about to occur; I say, if this action tended to mislead Mulligan,—then I submit to you whether the flagman was not negligent, and whether there was any negligence on the part of Mulligan.  These are questions which you must determine from all the facts in the case."  There was evidence tending to show that the flagman, instead of standing in the center of the street at the time of the accident, was on the side of the street west of the ice-wagon, and that he did not attempt to stop Mulligan until he had passed beyond the ice-wagon, and was very near the railroad track.  The rear end of the train that was standing upon the Batavia track was near the Main-Street crossing, and, as we have seen, was blowing off steam at the time.  The court, in the part of the charge complained of, simply called attention to the circumstances, and submitted the facts to the jury for their consideration.

While isolated parts of the charge of the court may be subject to some criticism, taking the charge as a whole the jury could not have been misled, and were, we think, correctly instructed.  The exception of the defendant to the suggestion of the court, that the evidence tended to show that the plaintiff listened, was not well taken, as we think a fair construction of the plaintiff's evidence shows that she did listen for approaching trains.  Exceptions taken by the defendant to the admission of evidence have been examined, and we fail to see that they are of sufficient importance to justify disturbing the verdict.  The order denying the motion for a new trial upon the minutes should be affirmed, with costs against the appellant.  All concur.